**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| LOUIS KWAME FOSU,<br><br>*Plaintiff,*<br><br>v.<br><br>KARA LARSEN, individually and in her official capacity at the University of Rhode Island;<br>JEANETTE RILEY, individually and in her official capacity at the University of Rhode Island;<br>KATHY COLLINS, individually and in her official capacity at the University of Rhode Island;<br>JEFFREY MICHAELSON, individually and in his official capacity as a lawyer and investigator at the University of Rhode Island;<br>DONALD DEHAYES, individually and in his official capacity at the University of Rhode Island;<br>MATTHEW BODAH, individually and in his official capacity at the University of Rhode Island;<br>ANNE MARIE COLEMAN, individually and in her official capacity at the University of Rhode Island;<br>PETER HARRINGTON, individually and in his official capacity at the University of Rhode Island;<br>and JOHN/JANE DOES 1-10, each in his or her individual and official capacity at the University of Rhode Island.<br>*Defendants.* | C.A. No. 1:26-cv-532-MSM-PAS |

**URI DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND REQUESTING THE COURT'S DECLARATION OF PLAINTIFF AS A VEXATIOUS LITIGANT AND IMPOSITION OF APPROPRIATE SANCTIONS**[1]

Five years and one month after he first sued the University of Rhode Island ("URI"), URI's

---

[1] This motion is filed on behalf of all Defendants except Jeffrey Michaelson, who was never a University of Rhode Island ("URI") employee. All other defendants are either a current employee of URI (Kara Larsen) or former URI employees (the remaining defendants except Attorney Michaelson) (collectively "URI Defendants"). Consequently, there is no basis for Fosu to sue either Attorney Michaelson or the individually named former URI employees in an "official capacity."

Board of Trustees, and three individually named defendants who were then URI senior administrators (David Dooley, Donald DeHayes, and Jeannette Riley), *Pro Se* Plaintiff Louis Kwame Fosu ("Fosu") has filed a third lawsuit arising from his former employment at URI that ended in June 2021. Fosu's latest lawsuit duplicates much of what his former attorneys pled in the operative Second Amended Complaint in his ongoing first-filed lawsuit. It belatedly raises new claims and adds new URI Defendants that his former attorneys did not plead in the Second Amended Complaint over three years ago. Regarding any purported "new" allegations post-dating his attorneys' pleading of the Second Amended Complaint, Fosu merely reiterates his imagined and absurd accusations of an alleged conspiracy against him involving the Court, the URI Defendants, and their legal counsel that were previously rejected as implausibly pled in his second-filed lawsuit. *See Fosu v. Univ. of R.I.*, *et al.*, C.A. No. 21-cv-279 (filed July 2, 2021) ("First URI Lawsuit," pending at summary judgment stage); *Fosu v. Richard, et al.*, C.A. No. 25-cv-691 (filed December 31, 2025) ("Nixon Peabody Lawsuit," dismissed with a judgment in defendants' favor).

## I. BACKGROUND

Litigation relating to Fosu's former employment has spanned over five years entirely because of disruptions concocted and provoked by Fosu. Since Fosu's former attorneys represented to the Court that they could no longer professionally and ethically remain as his counsel, Fosu has relentlessly attacked the Court (particularly Chief Judge McConnnell and now adding Judge McAuliffe to his vitriol), the URI Defendants, and their legal counsel. Fosu's actions have caused an eighteen-month stay and other delays of the First URI Lawsuit, due to his many motions and other submissions that have served no proper legal purpose. His baseless attacks against the Court have provoked judicial recusals. As a *pro se* litigant, Fosu's relentless and ongoing disruption of the orderly administration of the First URI Lawsuit and his frivolous filing

of the Nixon Peabody Lawsuit are well-documented in the Court's rulings.

In connection with the First URI Lawsuit, Fosu filed a frivolous judicial complaint against Chief Judge McConnell, which the Judicial Council for the First Circuit dismissed as "baseless and not cognizable."[2] Fosu's filing of two frivolous disciplinary complaints against counsel for the URI Defendants were dismissed by the Rhode Island Supreme Court's Office of Disciplinary Counsel. Further, Fosu has filed two appeals before the United States Court of Appeals for the First Circuit, No. 26-1184 (relating to the First URI Lawsuit and subject to a pending show cause order) and No. 26-1854 (appealing the judgment in defendants' favor in the Nixon Peabody Lawsuit). Plus, Fosu filed a frivolous petition seeking the First Circuit's issuance of a writ of mandamus (No. 26-1844) to disqualify Judge McAuliffe from presiding in the First URI Lawsuit (which the First Circuit promptly denied and dismissed).

Simply put, Fosu is a vexatious litigant who disruptively seeks to plead more claims against Defendants DeHayes and Riley, while belatedly suing five additional URI Defendants and Attorney Michaelson – over five years after Fosu's employment at URI ended in June 2021. Fosu conveniently fails to mention that his former attorneys had every opportunity to plead such claims in the First URI Lawsuit (either before or after the close of discovery), but they never did so. The Court must stop Fosu's abuse of process, with the First URI Lawsuit finally back on course at the summary judgment stage, even while Fosu continues to try to derail its progress.

The URI Defendants recognize that Fosu's Complaint in this third lawsuit will be subject to the Court's screening review because Fosu has not paid the required filing fee and may seek

---

[2] *In Re Complaint No. 01-24-90006*, Judicial Council of the First Circuit (July 30, 2025), at *1 & *4, available at https://www.ca1.uscourts.gov/sites/ca1/files/01-24-90006.O.pdf (last visited Aug. 11, 2026).

approval to proceed *in forma pauperis*.[3] Respectfully, while the URI Defendants could await such a screening review by the Court, they cannot remain idle while subjected to Fosu's non-stop abuse of process, broadly distributed harassing emails, and extrajudicial attacks.[4]

As the latest example, on August 10, 2026, Fosu sent an email missive addressed to the *New York Times*, the URI Defendants in this lawsuit, and a few other listed recipients, while apparently sending it to many blind-copied recipients. Fosu attached copies of the 139-page Complaint filed in this lawsuit and his "criminal referral" letter dated June 17, 2026, addressed to the Department of Justice and Federal Bureau of Investigation demanding a criminal investigation of Attorney Richard (as the URI Defendants' counsel) and the remaining defendants in the Nixon Peabody Lawsuit. In his email missive and its attachments, Fosu asserts the same frivolous and absurd claims that were dismissed as wholly implausible in the Nixon Peabody Lawsuit. (A copy of Fosu's 8/10/26 email without its exhibits is attached as Exhibit A).

Fosu's "criminal referral" letter sent to the Department of Justice and Federal Bureau of Investigation is a highly serious offense that the Court must address swiftly and sternly. Fosu's "criminal referral" is just his latest unilateral communication to law enforcement authorities

---

[3] The Court must evaluate whether Fosu is abusing the right to proceed *in forma pauperis* by continually engaging in vexatious tactics and repeatedly submitting frivolous filings. *See, e.g.*, *Ruiz-Romero v. Indus. Comm'n of P.R., Inc.*, Civ. No. 24-01385 (MAJ), 2024 WL 4265300, at *2 (D.P.R. Sept. 23, 2024); *Emrit v. Special Agent in Charge of FBI Field Off. in S. Dist. of N.Y.*, 2023 WL 2806462, at *2 (D. Me. Apr. 6, 2023), *report and recommendation accepted*, 2023 WL 3221087 (D. Me. May 3, 2023).

[4] As Fosu's frivolous filings mount before the Court and the First Circuit, he persists with his extrajudicial circulation of mass emails touting the filings and spouting his rote scurrilous attacks against the Court, the URI Defendants, and defense counsel. Fosu tries to shield the full circulation of his rants by directing his emails to the URI Defendants and their counsel, with a few listed copied recipients while blasting his vitriol to blind-copied recipients. The URI Defendants and their counsel speak only through court filings, while being subjected to Fosu's relentless harassment and abusive email missives.

demanding a criminal prosecution and arrest of Attorney Richard and his colleagues, which communications Fosu also widely and maliciously publicizes through his email missives (through his usual practice of using blind-copied recipients to shield the full scope of his misdeeds). If Fosu sent his letter of criminal referral to federal authorities as dated on or about June 17, 2026, he did so while the Court was reviewing the Rule 12(b)(6) motion in the Nixon Peabody Lawsuit and before the issuance of its ruling (which occurred on June 25, 2026 dismissing Fosu's Complaint). In taking such malicious action, Fosu demonstrates his total disrespect for process before the Court. Because of its false and incendiary accusations, the URI Defendants attach Fosu's "criminal referral" letter under seal as Exhibit B (despite his apparent wide circulation of the letter to many third parties). Fosu's malicious targeting and continuous efforts to harass and intimidate opposing counsel are clearly inappropriate and have reached the level of a sanctionable offense.[5]

Fosu's persistent extrajudicial actions directly violate the Rules of Professional Conduct, as adopted by the Rhode Island Supreme Court and made applicable to proceedings before the Court under its Local Rules. *See* LR Gen. 208 (Standards of Professional Conduct). As a *pro se*

---

5 *See*, *e.g.*, *Greene v. Independent Pilots Ass'n*., No. 18-5296, 2018 WL 9651540, at *2 (6th Cir. Oct. 4, 2018) (upholding sanctions enjoining a *pro se* plaintiff from his continuation of "threatening witnesses and opposing counsel with criminal prosecution and engaging in threatening, abusive, and intimidating communications"); *Eustice v. Louisiana Through Bd. of Supervisors of La. St. Univ. and Agriculture and Mechanical Coll.*, No. 18-1008-SDD-RLB, 2020 WL 3520298, at *9-10 (M.D. La. June 29, 2020) (sanctioning *pro se* litigant for threatening emails sent to opposing counsel)*; Espinoza v. Mex-Am Café, LLC*, No. 1:14CV30, 2015 WL 5431949, at *8 (M.D.N.C. Sept. 15, 2015) (threatening opposing party and counsel with criminal prosecution and jail time violates the Rules of Professional Responsibility); *Teledyne Technologies v. Shekar*, No. 15-cv-1392, 2015 WL 5438648, at *3 (N.D. Ill. June 17, 2015) (enjoining defendant from threatening opposing counsel, court staff, or witnesses with arrest or criminal prosecution, investigation, or indictment related to statements or testimony made or anticipated in connection with the case);, *In re Disciplinary Action Against Ulanowski*, 800 N.W.2d 785, 801 (Minn. 2011) ("Improperly threatening criminal prosecution and harassing opposing counsel may subject an attorney to discipline.").

litigant, Fosu must adhere to the required standards. In their Preamble, the Rules of Professional Conduct make clear that an attorney (and by extension, a *pro se* litigant representing himself) "should use the law's procedures only for legitimate purposes and not to harass or intimidate others" and must "demonstrate respect for the legal system." With civil litigation ongoing before the Court in the First URI Lawsuit and this lawsuit, as well as Fosu's appeal before the First Circuit in the Nixon Peabody Lawsuit, Fosu has no respect for the judicial process and refuse to let the pending civil proceedings take their course. Instead, Fosu takes matters into his own hands through his typing and circulation of vitriolic email diatribes outside of the ongoing judicial process. In doing so, Fosu is unrelenting in his abusive harassment and defamation of the URI Defendants and their counsel, while touting that he is doing everything that he can to have them criminally investigated and arrested. Plain and simple, Fosu's malicious and bullying approach to litigation disrespects the Court and contravenes the boundaries of acceptable advocacy under the Rules of Professional Responsibility, justifying the Court's imposition of stern sanctions for his blatant and intentional misconduct.[6]

Facing the continuous onslaught of Fosu's frivolous filings, abusive efforts trying to provoke criminal investigations and prosecutions, and non-stop circulation of harassing rants and missives, the URI Defendants move proactively and promptly for the dismissal Fosu's frivolous third-filed lawsuit. As pled in his Complaint, Fosu's allegations and claims are time-barred,

---

[6] *See Bakhtiari v. Kahn*, Nos. 24-2782, 24-2787, 2026 WL 1239288, at *2-3 (7th Cir, May 6, 2026) (affirming dismissal of *pro se* litigant's civil actions with prejudice where he purposefully engaged in harassing and threatening conduct toward opposing counsel), *Jaye v. Barr*, No. C19-0121-LTS, 2021 WL 1148953, at *10 (N.D. Iowa Mar. 25, 2021) ("Abusive conduct sanctionable under the Court's inherent power includes extrajudicial communications intended to harass or intimate opposing parties, their counsel, or the Court.") (collecting cases); *Blum v. Schlegel*, No. 91-CV-633A, 1996 WL 925921, at *8 (W.D.N.Y. May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning litigant for sending letters to third parties disparaging opposing counsel and the presiding judge).

wrongly seek to expand upon the allegations and claims and add new defendants that his attorneys never pled in the ongoing First URI Lawsuit (despite pleading three times on his behalf), and regurgitate Fosu's preposterous belief that there is a grand and ongoing conspiracy against him somehow agreed upon and effectuated by the Court, the URI Defendants, and defense counsel.

Fosu's seemingly unending stream of lawsuits, frivolous filings, harassment of the URI Defendants and their counsel, and attacks against the Court and its judges must be strongly and sternly addressed by the Court. As Chief Judge McConnell wrote to explain his recusal in the First URI Lawsuit (for none of the reasons stated by Fosu), the Court had finally reached its limits with Fosu's years of false and incendiary accusations. *See* 10/10/25 Order of Recusal at 1-2 (Doc. No. 73). The URI Defendants and their counsel, who have always abided by the applicable rules of procedure and professional conduct, have likewise reached their limits while they await Fosu's certain unleashing of his next abusive attacks targeting them.

While Fosu has delayed and disrupted the judicial process repeatedly, the URI Defendants have remained ready to present their strong and dispositive defenses in the First URI Lawsuit. They have spoken only in court and have presented their case in the face of Fosu's bullying, harassment, intimidation tactics, and vexatious filings – which have imposed considerable litigation delays with resulting expenses, and prejudice to their detriment. For the reasons stated below, the URI Defendants request that the Court dismiss Fosu's third-filed lawsuit with prejudice and without leave to amend, while declaring Fosu what he is - a vexatious litigant – and sanctioning him for his escalating litigation misconduct and abuse of the judicial system.

## II. THE OPERATIVE PLEADING IN THE FIRST URI LAWSUIT[7]

Fosu filed the First URI Lawsuit on July 2, 2021 (Doc. No. 1), and the URI Defendants

---

[7] Citations in this section refer to docket entries in the First URI Lawsuit.

tested the plausibility of Fosu's Complaint under Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 6-7, 9, and 11). On March 14, 2022, the Court entered its Memorandum and Order granting the Rule 12(b)(6) motion in part, and denying it, in part. (Doc. No. 15). The Court allowed Fosu a thirty-day period to file an Amended Complaint. (3/14/22 Text Order). On April 13, 2022, Fosu's attorneys moved to file an Amended Complaint (Doc. No. 17), which the URI Defendants did not oppose, and the Court docketed the Amended Complaint on April 27, 2022 (Doc. No. 19).

Factual discovery ensued for fourteen months thereafter, which closed on June 14, 2023 after several extensions. (4/28/23 Text Order (establishing a final 6/14/23 discovery closure date)). On June 19, 2023 (five days after the close of discovery), Fosu's attorneys moved to file the Second Amended Complaint (Doc. 34), which the URI Defendants did not oppose. The proffered Second Amended Complaint sought to add claims under Title VII of the Civil Rights Act of 1964 (after the exhaustion of administrative process) and a related claim under the Rhode Island Civil Rights Act. (*Id.*). Pursuant to a July 7, 2023 Text Order, the Court docketed Fosu's Second Amended Complaint, which remains the operative pleading in the First URI Lawsuit (Doc No. 36).

When Fosu's attorneys filed the Second Amended Complaint <u>after</u> the close of discovery, they did not seek to add Kara Larsen, Kathy Collins, Jeffrey Michaelson, Matthew Bodah, Anne Marie Coleman, or Peter Harrington as new defendants (all of whom Fosu now seeks to sue over three years later). Nor did they seek to add claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. §§ 1983 and 1985. Fosu must stand by what his former attorneys pled acting on his behalf. Fosu cannot conveniently turn his back on his operative Second Amended Complaint, which his former attorneys filed with their full benefit of completed discovery and knowledge that the litigation was proceeding to the summary judgment phase.

Pursuant to the Court's scheduling order dated October 2, 2023, summary judgment filings were due on November 3, 2023 per a stipulated agreement of the parties' counsel. After agreeing to this deadline and without any advance notice to the Court or opposing counsel, Fosu's *pro hac vice* attorneys filed a motion to withdraw their appearances during the evening of October 31, 2023, citing that they could no longer continue to represent Fosu "consistent with counsel's professional and ethical obligations" to the Court. (Doc. No. 39). On November 2, 2023, Fosu's second Rhode Island counsel moved to withdraw his appearance because of "an irreparable breakdown of the attorney-client relationship that prohibits the Attorney from continued representation in this matter." (Doc. No. 41).

Since his attorneys' abrupt withdrawals of their appearances, Fosu has <u>never</u> informed the Court that he wished to add any additional claims or defendants through a Third Amended Complaint in the First URI Lawsuit. If he had sought leave to amend, the URI Defendants would have appropriately opposed any further amendments as lacking good cause because of their clear untimeliness. "Undue delay is a permissible ground for denying leave to amend, and when a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay." *U.S. ex rel. Wilson v. Bristol-Myers Squibb, Inc.*, 750 F.3d 111, 119-20 (1st Cir. 2014) (internal citations and quotation marks omitted); *see also Calderón-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 19 (1st Cir. 2013) (noting that other reasons to deny leave include "bad faith, futility, or the absence of due diligence on the movant's part" (alteration omitted)). Whether a considerable period has passed in a particular case depends on the circumstances, *see Kay v. N.H. Democratic Party*, 821 F.2d 31, 34 (1st Cir. 1987), but courts regularly find that periods between twelve and twenty-four months warrant denial of leave to amend, *see, e.g.*, *Acosta-Mestre v. Hilton Int'l of*

*P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998) (affirming denial of leave after fifteen-month delay); *Grant v. News Grp. Bos., Inc.*, 55 F. 3d 1, 5-6 (1st Cir. 1995) (fourteen-month delay); *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F. 2d 922, 933 (1st Cir. 1983) (seventeen-month delay).

Now, over three years after the close of discovery on June 14, 2023 in the First URI Lawsuit and the docketing of Fosu's operative Second Amended Complaint on July 7, 2023 filed by his then attorneys, Fosu seeks belatedly and vexatiously to accomplish for the first time in his third-filed lawsuit what he certainly cannot pursue in the First URI Lawsuit – the litigation of more claims against more URI Defendants. In fact, Fosu's widely circulated email sent on August 10, 2026 (sent five days after his filing of his third lawsuits) threatens to bring more claims or file more lawsuits. *See* Ex. A at p.3 ("Any additional participation in the conduct alleged in this Complaint will be documented and, where warranted, presented to the Court and government authorities through supplemental filings or an amended complaint.").

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must present facts that make the claim plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The Court must separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"

cannot suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly,* 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly,* 550 U.S. at 557); *see also Soto-Torres v. Fraticelli,* 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

When a motion to dismiss is based on an affirmative defense, such as the statute of limitations, the facts establishing the defense must be "definitively ascertainable from the complaint and the other allowable sources of information," and must be sufficient "to establish the affirmative defense with certitude." *Rodi v. Southern New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) (citing *In re Colonial Mortg. Bankers Corp*., 324 F.3d 12, 16 (1st Cir. 2003)).

### B. Declaration of a *Pro Se* Plaintiff as a Vexatious Litigant

While the courts must be solicitous of the rights of *pro se* litigants, they have the inherent power to control vexatious or oppressive behavior of litigants who appear before it. *Chambers v. NASCO, Inc*., 501 U.S. 32, 45-50 (1991). "A pro se litigant who has demonstrated a capacity for understanding and articulating the issues may reasonably be extended fewer allowances than a pro se litigant who is hopelessly out of his depth." *Sena v. Kenneway*, 997 F.3d 378, 387 (1st Cir. 2021).

"Federal courts possess discretionary powers to regulate the conduct of abusive litigants," which "includes the ability to enjoin a party – even a pro se party – from filing frivolous and vexatious motions." *United States v. Gomez-Rosario*, 418 F.3d 90, 101 (1st Cir. 2005) (citation and internal quotation marks omitted). Limited Judicial resources should not be diverted with frivolous or vexatious claims. As used in this context, "frivolous" does not refer to the subjective

intention of a plaintiff or the importance the claim has for the plaintiff. Rather, in legal parlance, a complaint is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Vexatious conduct occurs when a party's actions are "frivolous, unreasonable, or without foundation." *Local 285 Serv. Employees Int'l v. Nonotuck Res. Assoc., Inc.*, 64 F.3d 735, 737 (1st Cir. 1995) (internal citations omitted).

## IV. ARGUMENT

### A. Fosu, acting through his former attorneys, represented to the Court that he had pled the full and final scope of his claims against any URI Defendant.

Fosu twists himself into contortions trying to justify his filing of this new lawsuit over three years after his former attorneys pled the operative Second Amended Complaint in the First URI Lawsuit. On one hand, in his many *pro se* filings since early November 2023, Fosu has claimed that his former attorneys properly represented his interests before they abruptly withdrew their appearances. If Fosu means what he says, then he should stand and be bound by what the attorneys expressly pled and represented, as officers of the Court, to constitute the full and final extent of Fosu's claims relating to his former URI employment. On the other hand, Fosu now seems imply that his former attorneys failed him by not pleading his claims fully and properly relating to his former URI employment. To the extent that Fosu disagrees with his former attorneys' strategy in pleading his claims over three years ago, that dispute reached its apex in the late October 2023, at which time they abruptly withdrew from representing him citing their professional and ethical obligations to the Court. Regardless, the time has long passed for Fosu to contend that his claims relating to his former URI employment have not been raised fully. Where matters now stand, what is pled in Fosu's Second Amended Complaint in the still-pending First URI Lawsuit pleads and controls all claims related to Fosu's former URI employment that ended in June 2021 – <u>nothing else</u>.

**B. Fosu's six counts under 42 U.S.C. §§ 1983 and 1985 fail to timely raise any claims relating to his former URI employment, nor do they state any plausible timely asserted basis upon which relief can be granted.**

The URI Defendants first address Fosu's six counts (III-VIII) that he has pled under 42 U.S.C. §§ 1983 and 1985, which are subject to a shorter limitations period than his two counts pled under RICO (I-II). It is an undisputed fact in the record of the First URI Lawsuit that Fosu's last year of employment at URI was the 2020-21 academic year and that his employment ended over five years ago in June 2021 – five years and two months before his filing of this lawsuit.

Neither 42 U.S.C. §§ 1983 nor 1985 contain a built-in limitations period. These civil rights statutes borrow the forum state's statute of limitations for personal injury claims. *See*, *e.g.*, *Rodriguez-Garcia v. Municipality of Caguas*, 354 F.3d 91, 96 (1st Cir. 2004). Rhode Island's three-year limitation period under R.I. Gen. Laws § 9-1-14(b) governs. Assuming Fosu's filing of this lawsuit is deemed to have occurred on August 5, 2026 (notwithstanding his failure to pay the required filing fee), his §§ 1983 and 1985 claims must have accrued on or after August 5, 2023 to be timely pled. Regarding his claims in Counts III-VIII seeking to raise matters relating to his former employment at URI, he misses the mark by over two years, as all such claims stemming from his former employment at URI accrued by no later than June 2021.

**i. Fosu's tolling theory is nonsensical and does not help him.**

Among his six counts in the Complaint pleading claims against the URI Defendants under §§ 1983 and 1985, Fosu states only in paragraph 239 of Count III (alleging Conspiracy to Deprive Equal Protection, 42 U.S.C. § 1985(3)) that "Defendants actively concealed the fraudulent nature of the Michaelson investigation by presenting it to the courts as legitimate and by concealing Michaelson's admission that he made no findings. These facts were not revealed until Michaelson's deposition on March 6, 2023. The statute was tolled until March 6, 2023."

Regardless of whether Fosu is limiting this purely conclusory single-paragraph allegation to Count III alone or intends to have it apply as well to his other five §§ 1983 and 1985 counts (Counts IV-VIII), the alleged tolling does nothing to save the untimely claims. First, as demonstrated in the record in the First URI Lawsuit, Fosu received a full copy of Michaelson's final investigative report in May 2021 while he was still employed at URI. At that time, Fosu was free to read the report with its appendix and make his own determinations regarding the contents. Nothing was concealed from Fosu between his receipt of the report in May 2021 and his former attorneys' deposition of Michaelson on March 6, 2023.

Further negating Fosu's narrative desperately trying to save his untimely pled claims, Michaelson's March 6, 2023 deposition occurred over three months before the June 14, 2023 close of discovery in the First URI Lawsuit and four months before the docketing of Fosu's Second Amended Complaint on July 7, 2023. Again, Fosu, acting through his then legal counsel, had ample time and every opportunity to seek leave to plead any additional §§ 1983 and 1985 claims in the Second Amended Complaint with the full benefit of completed discovery (including Michaelson's deposition) and seek leave to add any additional defendants in the First URI Lawsuit. Yet, Fosu's attorneys did not do so by their own choice and with his knowledge and approval, which still binds Fosu at this time.

Plus, even if Fosu can somehow rely upon his fraudulent concealment tolling allegation to contend in this litigation that the accrual date of his claims relating to his former employment did not occur until March 6, 2023 (the date of Attorney Michaelson's deposition), Fosu did not timely file this lawsuit within three years thereafter by March 6, 2026. Instead, Fosu filed his Complaint on August 5, 2026 - three years and four months after what he contends to be a tolled accrual date of all claims relating to his former URI employment. Accordingly, even accepting Fosu's

contorted logic and claimed accrual date, his §§ 1983 and 1985 claims (Counts III-VIII) are time-barred as they relate in any way to his former employment at URI. Fosu's contention of a later March 6, 2023 accrual date (as opposed to the actual accrual date of no later than June 2021) does nothing to save his untimely pled claims relating to his former URI employment.

**ii. There is no basis to apply the continuing violation doctrine, nor has Fosu raised any plausible claim that accrued within the limitations period.**

In a conclusory manner, Fosu claims that he should receive the benefit of the continuing violations doctrine to bring claims extending back by more than three years before his filing of this lawsuit (matters predating August 5, 2023 and reaching back to his former URI employment that ended in June 2021). As Judge Dubose recently held at the Rule 12(b)(6) stage, a litigant cannot plead and claim the continuing violation doctrine in a purely conclusory manner, which is all that Fosu has done here. *Boatright v. Univ. of R.I.*, C.A. No. 25-cv-549-MRD-AEM, 2026 WL 2123573, at *2 n.1 (D.R.I. July 23, 2026).

Plus, Fosu has not shown any anchoring claim within the limitations period (from August 5, 2023 through August 5, 2026) that would enable him to reach back to the point of his former URI employment that ended over five years ago. As alleged anchoring events, in paragraphs 172-204 of his Complaints, Fosu purports that there are "nine categories" of so-called "overt acts" by the URI Defendants "within the limitations period." To start, Fosu pleads that these alleged "overt acts" occurred between 2024 and 2026. Therefore, by Fosu's own admission, there were no "overt acts" during the five-month period between August 5, 2023 (three years before he filed this suit) and January 2024, which further makes any conceivable application of the continuing violation doctrine even more disjointed.

An examination of the nine alleged overt acts shows the total implausibility of what Fosu seeks to pursue under the §§ 1983 and 1985 claims in the Complaint pleading his third-filed lawsuit.

- **"Overt Act No. 1: Continued Deployment of Fabricated Investigation in Case No. 21-cv-279 (2024-2026)" (Paragraphs 173-76)**

Fosu alleges that, throughout 2024, 2025, and 2026, the Michaelson investigation was relied upon in the First URI Lawsuit as "the primary justification for Plaintiff's termination," which is hardly a full and accurate description of why URI placed Fosu on paid administrative leave in January 2021 and declined to renew his year-to-year appointment at the end of the 2020-21 academic year, as detailed in the pending summary judgment filings in the First URI Lawsuit.

Yet, even accepting the truth of Fosu's allegations regarding "overt act no. 1," they hardly support any §§ 1983 and 1985 claims against any URI Defendant. Again, all of Fosu's alleged contentions about the Michaelson investigation, as now pled for the first time, could have easily been pled by his former attorneys upon presenting the Second Amended Complaint in June 2023 (three months after Michaelson's deposition on March 6, 2023). Plus, Fosu never sought leave to file a Third Amended Complaint in the First URI Lawsuit, which would have been the proper procedural means for him to seek to bring the claims.

Reading his allegations in paragraphs 173-76, Fosu is merely conveying his subjective protestations with how the URI Defendants, through Attorney Richard, have properly litigated the First URI Lawsuit, which both Chief Judge McConnell and Judge McAulliffe, as the presiding judges, have found to have always been professionally conducted and ethically presented. *See* First URI Lawsuit, 1/19/24 Order (Doc. No. 58) at 2 (Attorney Richard's presentation of the URI Defendants' defenses has been "nothing but professional, ethical and proper."); Nixon Peabody Lawsuit, 6/25/26 Rule 12(b)(6) Order (Doc. No. 25) at 17 ("the record in the [First URI Lawsuit]

reveals a judge and counsel properly responding to Fosu's filings").

**"Overt Acts Nos. 2-9" (Paragraphs 177-204)**

The URI Defendants address the other eight alleged "overt acts" collectively because they are all utterly absurd and relate entirely to either Fosu's disagreement with the Court's recusals and orders entered during 2024-2026 or its dismissal of his frivolous Nixon Peabody Lawsuit. For example, in its Rule 12(b)(6) ruling dismissing the Nixon Peabody Lawsuit, the Court rejected the plausibility of Fosu's "alleg[ations] generally that Richard and URI officials agreed to obtain rulings in their favor by using false and misleading filings, that Richard filed misleading affidavits and memoranda and misused FERPA to suppress evidence, that he attempted to influence the judge through the filings, and that his actions caused Fosu 'litigation prejudice.'" Nixon Peabody Lawsuit. Rule 12(b)(6) Order (Doc. No. 25) at 17. Yet, these same implausible allegations resurface throughout Fosu's e pleading of "overt acts" numbered 2-8 in his Complaint.

Simply put, reading these alleged "overt acts," it defies common sense to even try to conceive any plausible basis to hold the URI Defendants liable for how the Court determined its recusals (which Fosu provoked) and how Chief Judge McConnell and Judge McAuliffe have adjudicated Fosu's frivolous filings to date. Existing only in Fosu's imagination, these alleged "overt acts" somehow derive from and relate to an alleged conspiracy between the Court, URI Defendants, and Attorney Richard, which is not based upon any fact. To the extent the URI Defendants "influenced" any ruling adverse to Fosu, they did so only through the proper filing and presentation of the record and their arguments in accordance with Rule 11.

Fosu's preposterous assumptions about an ongoing conspiracy have already taken far too much time and resources before the Court, while imposing considerable needless expenses upon the URI Defendants and their legal counsel. Yet again, the Court should reject and dismiss Fosu's

absurd accusations as implausibly pled. Looking at the alleged events dated only between 2024-2026 (while Fosu has been proceeding *pro se*), he pleads nothing, even while dumping thousands of pages into the Court's record, supporting any timely and plausible §§ 1983 and 1985 claims against any URI Defendant under Counts III-VIII of his Complaint, which the Court should dismiss with prejudice.

**C. Fosu's RICO claims are time-barred and fail to state any plausible basis upon which relief can be granted.**

Counts I-II of Fosu's Complaint allege claims against the URI Defendants for allegedly conducting a RICO enterprise through a pattern of racketeering activity (Count I) and allegedly conspiring in violation of RICO (Count II). Civil RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). The statute of limitations accrues when "a plaintiff knew or should have known of his injury." *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990). Fosu's RICO claims can reach back no further than August 5, 2022 (over a year after his employment had ended at URI in June 2021).

As of August 5, 2022, the First URI Lawsuit was in its initial days of discovery, which would continue for the next ten months through June 2023. Over their two-plus years as counsel of record for Fosu (from the outset of the First URI Lawsuit on July 2, 2021, through Rule 12(b)(6) briefing and argument, through factual discovery spanning more than a year, and up to counsel's abrupt withdrawals of their appearances), Fosu's former attorneys never approached the Court to suggest any allegations that either the URI Defendants or their legal counsel were conducting themselves improperly in the First URI Lawsuit. Fosu's counsel certainly never implied that anyone at URI or their legal counsel was engaged in a RICO enterprise through a pattern of criminal racketeering activity. Once again, Fosu's allegations are devoid of any facts grounded in reality. The docket in the First URI Lawsuit speaks for itself and dispels the absurdity of Fosu's

RICO claims. As is evident on the docket, Fosu concocted and caused disruptions and delays in the First URI Lawsuit from November 2023 to the present through his vexatious agendas.

Federal courts routinely reject RICO claims predicated on litigation conduct cast as mail or wire fraud or some other predicate act. *See Langan v. Smith*, 312 F. Supp. 3d 201, 205-07 (D. Mass. 2018) (collecting cases); *see also Gabovitch v. Shear*, 70 F.3d 1252 (Table), 1995 WL 697319, at *2 (1st Cir. 1995) (concluding that alleged proffering of a false affidavit and testimony to a court does not constitute a predicate act). The rejection of such claims, like those raised by Fosu in the Nixon Peabody Lawsuit and realleged vexatiously here, is justified by "compelling policy arguments" concerning the effective functioning of the legal system and our courts' administration of justice. *See Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (collecting cases and noting that if RICO claims predicated on litigation activity were permitted, "every unsuccessful lawsuit could spawn a retaliatory action" and "permitting such claims would erode the principles undergirding the doctrines of res judicata and collateral estoppel" and "chill litigants and lawyers and frustrate the well-established public policy goal of maintaining open access to the courts." (citation omitted) (cleaned up)); *Gabovitch*, 70 F.3d 1252, 1995 WL 697319, at *3 (concluding that by alleging that defendants' litigation stance in another case was fraudulent, plaintiff was insisting upon a right to relitigate that entire case, and "[t]he RICO statute obviously was not meant to endorse any such occurrence."). *See also Bogosian v. Rhode Island Airport Corp. (T.F. Green Airport)*, No. 17-cv-16S, 2017 WL 9324764, at *8-9 (D.R.I. May 3, 2017), *report and recommendation adopted in part*, 2017 WL 2954536 (D.R.I. July 11, 2017) (dismissing *pro se* litigant's RICO claims against counsel for opposing party).

The URI Defendants will not respond point by point to what Fosu has pled in his rambling narrative, because he simply regurgitates what he asserted as the basis for his RICO claims in his

failed Nixon Peabody Lawsuit. Fosu realleges his same absurd assumptions about a devious criminal enterprise that was somehow concocted and put into action by Attorney Richard and his clients and somehow with the Court's knowing participation and willful assistance. Fosu realleges the same illusory patterns of racketeering activity – which he gratuitously portrays as wire fraud, obstruction of justice, and witness tampering and intimidation – that the Court summarily rejected and dismissed as utterly implausible in the Nixon Peabody Lawsuit. For the very same reasons stated in its dismissal of the Nixon Peabody Lawsuit, the Court should dismiss with prejudice Fosu's duplicative and absurd RICO claims pled in Counts I and II of his Complaint here.

**D. The Court should declare Fosu a vexatious litigant and address his sanctionable misconduct.**

As the Supreme Court has explained, "[e]very paper filed [with the Court], no matter how repetitious or frivolous, requires some portion of the institution's limited resources." *In re MacDonald*, 489 U.S. 180, 184 (1989) (per curiam). The Court has a "responsibility [] to see that these resources are allocated in a way that promotes the interests of justice." *Id*. The "continual processing" of duplicative filings or repetitious lawsuits "does not promote that end." *Id*. "[E]xtreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties" may justify a federal court's issuance of an injunction barring a party from further filing frivolous and vexatious lawsuits." *Otis Elevator Co. v. Int'l Union of Elevator Constructors, Local 4*, 408 F.3d 1, 10 (1st Cir. 2005) (citation omitted); *see also Siri v. Town of Hingham*, 662 F. Supp. 3d 44 (D. Mass. 2023) (finding plaintiff's conduct, having filed three lawsuits and five pleadings arising from the same or similar events against identical or substantially similar parties, had escalated beyond litigiousness to vexatious and enjoining plaintiff from filing *pro se* complaints without the Court's leave.).

Before the Court and in his widely-circulated malicious email missives, Fosu touts his professional credentials including his law degree. Yet, Fosu conveniently pleads ignorance as *a pro se* litigant and begs for forgiveness citing his self-proclaimed "pristine soul" when confronted with the justified consequences of his scurrilous filings and abusive actions maliciously targeting the URI Defendants and their counsel. As much as he tries, Fosu cannot have it both ways. The Court must hold Fosu to a reasonable standard of conduct, especially considering his law degree, and because of his many frivolous and voluminous filings since November 2023 (often unnecessarily spanning hundreds or thousands of pages). *See* Nixon Peabody Lawsuit, 8/11/26 Order (ECF No. 32) at 3 n.2 ("The court recognizes that Fosu is representing himself, but also notes, unlike most pro se parties, Fosu has a law degree.").

Pursuant to the Court's inherent authority under Rule 11 and 28 U.S.C. § 1927, the URI Defendants request that the Court sanction Fosu appropriately and sternly for frivolous filings (including his Complaint here) that squander judicial resources and wrongfully compel the URI Defendants (and their legal counsel) to incur substantial time and expenses in response, while remaining subjected to Fosu's onslaught of self-promotional and scurrilous attacks through his email missives and extrajudicial actions. At some point, enough is enough – and that point has been far exceeded with Fosu's recent filing of his frivolous Nixon Peabody Lawsuit and this frivolous third-filed lawsuit. Plus, as a clear indication that he thrives on bullying, harassment, and intimidation, five days after commencing this lawsuit, Fosu circulated his August 10, 2026 email missive (*see* Ex. A), touting and attaching his letter of "criminal referral" to the Department of Justice and Federal Bureau of Investigation dated June 17, 2026 trying to provoke a criminal investigation of the URI Defendants' counsel (*see* Ex. B, filed under seal). The Court should consider all appropriate sanctions against Fosu for his ongoing efforts to harass and intimidate the

URI Defendants and their counsel. His recent "criminal referral" further crosses the sanctionable line that he has long surpassed.

As the First Circuit explained in *Cok v. Family Court of Rhode Island*, before the Court may enjoin any further filings by Fosu (which is already justified), the Court should warn him that "filing restrictions may be in the offing in response to groundless litigation." 995 F.2d 32, 35 (1st Cir. 1993). The First Circuit also observed that the Court should make clear "what previously filed frivolous cases or other abuses caused it to issue this injunction." *Id*. With Fosu's documented abusive antics and vexatious history, the Court should firmly and sternly provide a *Cok* warning to Fosu making clear that immediate filing restrictions and appropriate sanctions will issue upon any further vexatious filings on the docket, any filing of another frivolous and clearly time-barred lawsuit (such as this one) relating to his former URI employment that ended over five years ago, any further malicious "criminal referrals," and any continuing extrajudicial efforts to bully, intimidate, or harass the URI Defendants and their counsel. Fosu clearly will not stop otherwise.

**E. Even if any of Fosu's claims are somehow timely or plausible, the Complaint fails to comply with Rule 8(a)(2) and should be stricken under Rule 12(f).**

For the reasons described above, the Court should dismiss Fosu's Complaint in this third-filed lawsuit with prejudice pursuant to Federal of Civil Procedure 12(b)(6), and it should declare Fosu a vexatious litigant. However, Rules 8 and 12(f) provide additional grounds for the Court's rejection of the Complaint. Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the case showing that the pleader is entitled to relief." The requirement of a "short and plain statement" is important because one of the principal functions of a pleading is to give defendants fair notice of the basis for the claims against them so that they may respond. *See Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 101 (1st Cir. 2013). "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond

to it because they are forced to select the relevant material from a mass of verbiage." *Miranda v. United States*, 105 Fed. App'x 280, 281 (1st Cir. 2004) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281 at 522 (2d. ed. 1990)); *see also Peabody v. Griggs*, No. CIV. A. 08-243-ML, 2009 WL 3200686, at *11 (D.R.I. Oct. 6, 2009) ("Even answering [a] complaint" with "hundreds of averments" is "an expensive and unjustified burden" because Rule 8(b) requires a defendant to state defenses to each claim and admit or deny each allegation) (citation omitted).

Fosu has filed a 139-page Complaint spanning 313 paragraphs plus thirty-three prayers for relief, which is replete with his editorializing and usual scurrilous attacks. The URI Defendants should not be expected to respond to Fosu's overly verbose, rambling, repetitive narrative that does not meet Rule 8(a)(2)'s requirement of a "short and plain statement of the claim." Fosu has also improperly and needlessly attached sixty-one exhibits collectively totaling 2,602 pages (including whole copies of deposition transcripts individually spanning hundreds of pages). There is no doubt that Fosu's improperly pled and vexatiously submitted Complaint violates Rule 8(a)(2).

When confronted with a *pro se* litigant's complaint in contravention of Rule 8(a)(2), the choice of a remedy rests with the Court. *See Persaud v. Univ. of R.I.*, No. 25-cv-307-JAW-KFW, 2026 WL 1846529, at *9 (D.R.I. June 26, 2026); *see also Kuehl v. F.D.I.C.*, 8 F3d 905, 908-09 (1st Cir. 1993) (finding lower court's dismissal of complaint with prejudice for violating Rule 8(a)(2) after warning plaintiff to file a "concise" pleading with reduced number of defendants was a "severe" sanction but was "within the wide boundaries of the court's discretion."). A court may raise a Rule 8 violation *sua sponte* based on its inherent authority, without the need for the defendant to file a separate motion. *Peabody*, 2009 WL 3200686, at *5 n.3 (citation omitted).

Fosu's disruptive and abusive three-year record as a *pro se* litigant is evident, and he has not earned any right to replead. Fosu has demonstrated at every turn that leave to amend would

only result in another futile amended pleading that would similarly fail to state a claim upon which relief can be granted. *See Boatright,* 2026 WL 2123573, at *4 (concluding that a proposed amended complaint would be futile). More appropriately, Rule 12(f) authorizes the Court to strike any pleading replete with "redundant, immaterial, impertinent, or scandalous matter[s]," all of which permeate Fosu's pleading of his overblown and excessive third-filed lawsuit, so the striking of the Complaint in its entirety is appropriate and justified.

## V. CONCLUSION

Clearly, Fosu contrived, timed, and filed his third lawsuit for an improper purpose, after his recent efforts to disrupt and derail the First URI Lawsuit have failed (before the Court and the First Circuit) and with summary judgment briefing finally ongoing in that case (three years after it was first scheduled). For the reasons already evident in the dockets of Fosu's three lawsuits and as addressed above, the Court should grant the URI Defendants' Rule 12(b)(6) motion to dismiss the Complaint with prejudice and the entry of a Judgment in their favor.

Also, the Court should declare Fosu a vexatious litigant and impose sanctions against him for his persistent abuse of process and extrajudicial actions targeting the URI Defendants and their counsel. Despite his self-proclaimed "pristine soul," Fosu is obsessively and maliciously trying to threaten, bully, and intimidate the URI Defendants and their counsel, which reached its nadir with his widely-circulated August 10, 2026 email missive touting this lawsuit and attachment of his "criminal referral" letter dated June 17, 2026. The Court must address Fosu's vexatious and abusive misconduct as a *pro se* litigant. Enough is enough.

URI DEFENDANTS,

KARA LARSEN, JEANNETTE RILEY, KATHY COLLINS, DONALD DEHAYES, MATTHEW BODAH, ANNE MARIE COLEMAN, and PETER HARRINGTON,

By Their Attorney,

*/s/ Steven M. Richard*
Steven M. Richard (#4403)
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: 401-454-1020
Fax: 866-947-1332
srichard@nixonpeabody.com

Dated: August 12, 2026

**CERTIFICATE OF SERVICE**

I certify that, on this 12th day of August, 2026, I filed and served this Motion via the Court's CM/ECF system. I have also served a copy to Plaintiff Louis Kwame Fosu via email at Loufosu@diverstitythinktank.org and regular mail to his listed address at 43 Connecticut Street, Cranston, Rhode Island 02920.

*/s/ Steven M. Richard*